**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00533-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00535-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00540-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00543-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **HUAWEI TECHNOLOGIES USA** | § | |
| **INC.; HUAWEI TECHNOLOGIES** | § | |
| **CO., LTD.,** | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.      U.S. Patent No. 6,882,627 (Case No. 6:20-cv-00533) Claim Terms ...............................1

     1.     "performing a SRG (shared risk group) topology transformation of the network topology into a virtual topology that discourages the use of network resources" (Claims 1, 29, 30) .............................................................................................................1

     2.     "second code means adapted to, for at least one shared risk group, determine …" (Claim 29) / "means adapted to, for at least one shared risk group, determine …" (Claim 30).........................1

     3.     "third code means for performing a SRG (shared risk group) topology transformation …" (Claim 29) / "means for performing a SRG (shared risk group) topology transformation …" (Claim 30) ........................................................................4

II.     U.S. Patent No. 6,999,727 (Case No. 6:20-cv-00543) Disputed Claim Terms ...............5

     4.     "a number of corrected errors (BCE) in a non-SCS base reference time period" (Claims 1, 4-7)........................................5

     5.     "means for implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction function" (Claims 4, 5)................................................6

     6.     "means for classifying said blocks either as corrected or uncorrected through the Forward Error Correction function" (Claims 4, 5) ...........................................................8

     7.     "means for calculating the Performance Monitoring function by implementing a correlation of the information regarding said corrected and uncorrected blocks" (Claims 4, 5)...........................9

     8.     "implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction Function" (Claims 6, 7)................................................................10

     9.     "classifying said blocks either as corrected or uncorrected through the Forward Error Correction function" (Claims 6, 7)........12

III.    U.S. Patent No. 7,508,755 (Case No. 6:20-cv-00535) Disputed Claim Terms ............12

    10.   "originating network device" (Claims 1, 3) ...........................................12

    11.   "switch over message" (Claims 1, 5, 8, 10, 13, 16, 18, 23, 25) .............13

12. "means for re-routing traffic traveling along the bi-directional LSP in the backwards direction..." (Claims 8, 23, 25)..........................14

13. "means for re-routing traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction" (Claim 20) ................................................................16

14. "means for transmitting a switch over message along the alternate path in the forward direction…" (Claims 20, 25)................17

15. "means for means for [sic] receiving traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction" (Claim 23) ......................................18

IV. **U.S. Patent No. 8,417,112 (Case No. 6:20-cv-00540) Disputed Claim Terms ............19**

16. "determining whether said collected BER values worsen over time" (Claims 1, 11) ..................................................19

**TABLE OF AUTHORITIES**

**Cases**

*3M Innovative Properties Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013).................................................................. 6, 14, 20

*Amdocs (Israel) Limited v. Openet Telecom, Inc.*,
  2018 Markman 1699429, 2018 WL 1699429 (E.D. Va. 2018) ................................................ 11

*Astrazeneca AB v. Mut. Pharm. Co.*,
  384 F.3d 1333 (Fed. Cir. 2004)................................................................................ 13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  717 F.3d 1269 (Fed. Cir. 2013)........................................................................... 2, 11

*Computer Docking Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008)..................................................................... 6, 14, 20

*Farstone Technology, Inc. v. Apple Inc.*,
  2015 Markman 857706, 2015 WL 857706 (C.D. Cal. 2015) ....................................... 3

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014)................................................................... passim

*In re Beauregard*,
  53 F.3d 1583 (Fed. Cir. 1995)............................................................................. 2, 11

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed.Cir. 2011)........................................................................... 3, 19

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  248 F.3d 1303 (Fed. Cir. 2001)................................................................................ 10

*SkinMedica, Inc. v. Histogen Inc.*,
  727 F.3d 1187 (Fed.Cir.2013)........................................................................................ 2

*Typhoon Touch Technologies, Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011)................................................................... passim

*Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*,
  2019 Markman 4259020, 2019 WL 4259020 (E.D. Tex. 2019)............................................. 11

*WhitServe LLC v. GoDaddy.Com, Inc.*,
  2014 WL 5668335 (D. Conn. 2014) ...................................................................... 11

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)....................................................................... 10, 11

*Winbond Elecs. Corp. v. Int'l Trade Comm'n,*
 4 F. App'x 832 (Fed. Cir. 2001) ............................................................................. 10

**Statutes**

35 U.S.C. § 112 ................................................................................................... 1, 12

## I.   U.S. Patent No. 6,882,627 (Case No. 6:20-cv-00533) Claim Terms

### 1.   "performing a SRG (shared risk group) topology transformation of the network topology into a virtual topology that discourages the use of network resources" (Claims 1, 29, 30)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "performing a transformation of links and/or nodes of a SRG (shared risk group) of the network into a virtual topology that discourages the use of network resources" |

Defendants admit that the specification does not limit this term to "links and/or nodes." Resp. Br. at 2. The claim term itself expressly does not limit the scope of the claim to "links and/or nodes"; instead the claim language recites "network resources." Indeed, that is exactly what is also expressly taught by the specification: "a network represented by a network topology representing an interconnected set of **network resources**." '627 patent, 2:11-13 (emphasis added). Defendants' argument that giving this term its proper construction "would likely render the claims invalid for lack of written description" (Resp. Br. at 2) is speculative and unsupported. Defendants fail to make any such showing, and further, Defendants fail to show that a person of ordinary skill in the art would not understand how to "discourage the use of" other network resources as recited by the claims and specification. Instead, as the specification teaches, "[g]roups of **network resources** which share common risks are referred herein as 'shared risk groups.'" '627 patent, 1:62-64 (emphasis added).

### 2.   "second code means adapted to, for at least one shared risk group, determine ..." (Claim 29) / "means adapted to, for at least one shared risk group, determine ..." (Claim 30)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function: determine if any of the at least one shared risk group includes any of the first sequence of network resources<br><br>Structure: processing platform-readable medium, and equivalents thereof (claim 29) / a network management platform, and equivalents thereof (claim 30) | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for failure to disclose sufficient structure |

1

| Algorithm (if required): *see e.g.*, 2:13-54, 3:54-4:15, 4:45-5:33, 6:23-37, 6:52-7:52, 9:18-23, 12:46-50 Figs. 3A, 3B, 6B, and equivalents thereof | |

Defendants' proposal should be rejected.[1] The **correct corresponding structure is** "processing platform-readable medium, and equivalents thereof" for Claim 29 and "a network management platform, and equivalents thereof" for Claim 30. Defendants have failed to show that Claims 29 is anything other than a typical *Beauregard* claim. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1287 (Fed. Cir. 2013) ("named for *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995) ... [c]laims in Beauregard format formally recite a tangible article of manufacture—a computer-readable medium, such as a computer disk or other data storage device—but such claims also require the device to contain a computer program for directing a computer to carry out a specified process"). Additionally, Defendants' reliance on *Net MoneyIn* is misplaced. Unlike in *Net MoneyIn*, the specification expressly recites that "[a]s known in the art, a network includes a set of processing sites generally referred to as stations or nodes…" ('627 patent, 1:13-14), and that a network management platform "would include any suitable combination of hardware and/or software." (*Id.*, 3:26-27). Thus, processing sites that include network management platforms were well known in the art. Similarly, Defendants' reliance on Dr. Lavian's testimony is unavailing. Dr. Lavian's testimony is wholly conclusory and without any evidence or support. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1385 (Fed. Cir. 2014) ("Beyond ambiguity, the expert's testimony is also conclusory. There is no documentary evidence—dictionary definition, paper, article, advertisement, product, system, method, etc.—to support his testimony. As such, the reasoning set forth in *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187 (Fed.Cir.2013) is applicable to this case. There we recognized that the evidentiary value of conclusory expert

---

[1] Additionally, Defendants filed a petition for *inter partes review* against this same '627 patent in IPR2021-00222. In IPR2021-00222, Defendants proposed to the PTAB that these terms are not indefinite for failing to disclose structure, but instead, "includes the corresponding structure—algorithms for identifying shared risk groups of FIG. 3B and 6B—and equivalents thereof." IPR2021-00222, Petition (Paper 2), at 16. Thus, Defendants have demonstrated that this term is not indefinite.

testimony in the context of claim construction is suspect and unhelpful: Expert testimony, in particular, is less reliable because it 'is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence.' For that reason, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.""). Finally, Defendants fail to explain why, for the term "third code means…" (below), Defendants agree to the corresponding structures of a processing platform-readable medium and a network management platform (albeit "comprising algorithms…") but argue at the same time that there is no such corresponding structure for this term "second code means…"

Next, the Federal Circuit has held that functions like 'processing,' 'receiving,' and 'storing' do not require the disclosure of an algorithm. *In re Katz Interactive Call Processing Patent Litig*., 639 F.3d 1303, 1315-16 (Fed.Cir. 2011). The same applies for "determin[ing]." *See e.g. Farstone Technology, Inc. v. Apple Inc*., 2015 Markman 857706, 2015 WL 857706, *7-*8 (C.D. Cal. 2015) (finding that the "Selecting" is a common computer function and therefore requires no additional structure to be disclosed.); *see also Typhoon Touch Technologies, Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384-86 (Fed. Cir. 2011) (holding that the determination whether a match exists to be sufficient textual description for a programmer of ordinary skill in the art as one of the steps in "means for cross-referencing," and that "the matching of entered responses with a library of possible responses" to be one of known computer-implemented operations and are "readily implemented by persons of skill in computer programming."). However, to the extent an algorithm is required,[2] the claim language itself provides all the algorithm that is required. More specifically, the claim language directs that for a shared risk group (which are groups of network resources ('627 patent, 1:62-64)), and a first sequence of network resources, determining if there are any of the first

---

[2] Defendants' reliance on *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) (en banc) is misplaced.  There the holding was not that a general purpose computer cannot be structure as Defendants imply; instead it is simply that in cases involving a claim limitation that is subject to § 112, ¶6 that must be implemented in a special purpose computer, the specification must disclose an algorithm *in addition to* a general purpose computer or microprocessor. *Id.*

sequence of network resources matching the resources of the shared risk group. However, further exemplary algorithms disclosed in the specification are recited at '627 patent, 2:13-54, 3:54-4:15, 4:45-5:33, 6:23-37, 6:52-7:52, 9:18-23, 12:46-50 Figs. 3A, 3B, 6B, and equivalents thereof. For example, the specification teaches in an embodiment that once the shared risk groups are determined (*e.g.* '627 patent, 6:23-37), each primary bi-directional link *belonging* to a shared risk group (SRG) under consideration is determined for transformation (*e.g., Id.*, 6:63-66) (emphasis added). Again, as in the claim language, a determination is made as to whether a resource in a first sequence of network resources also *belong* (is a match to) a resource in a shared risk group. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384-86 (Fed. Cir. 2011) (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function"). Finally, Dr. Lavian's testimony (¶¶ 62-72) is conclusory and unhelpful to the Court. *Hill-Rom Servs.*, 755 F.3d at 1385.

3. **"third code means for performing a SRG (shared risk group) topology transformation …" (Claim 29) / "means for performing a SRG (shared risk group) topology transformation …" (Claim 30)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Subject to 35 U.S.C. § 112, ¶6<br>Function: performing a SRG (shared risk group) topology transformation of the network topology into a virtual topology which discourages the use of network resources<br><br>Structure: processing platform-readable medium, and equivalents thereof (claim 29) / a network management platform, and equivalents thereof (claim 30)<br><br>Algorithm (if required): *see e.g.,* 2:31-3:18, 6:49-7:52, 7:63-8:28, 8:30-9:35, Figs. 2, 3A-3D, 4A, 4B, 5A, 5B, 6A-6E, and equivalents thereof | Subject to 35 U.S.C. § 112, ¶6<br>Function: performing a SRG (shard risk group) topology transformation of the network topology into a virtual topology which discourages the use of network resources<br><br>Structure: A processing platform-readable medium comprising algorithms for link and node transformation such as those disclosed in Figures 3C, 3D, 4A, and 4B and the corresponding embodiments disclosed in 6:49-7:52, and equivalents thereof (claim 29)<br><br>A network management platform comprising algorithms for link and node transformation such as those disclosed in Figures 3C, 3D, 4A, and 4B, and the corresponding embodiments disclosed in 6:49-7:52, and equivalents thereof (claim 30) |

Defendants have changed their position and now appear to agree with WSOU as to the corresponding structures of a processing platform-readable medium and a network management platform. Defendants argue that there is a dispute as to the corresponding structure.  However, Defendants' new proposal recites the same structure as WSOU but also includes a recitation of algorithm. As discussed above in Section I.2, the corresponding structures were well known at the time of invention, but to the extent an algorithm is required, exemplary algorithms disclosed in the specification are recited at '627 patent, 2:31-3:18, 6:49-7:52, 7:63-8:28, 8:30-9:35, Figs. 2, 3A-3D, 4A, 4B, 5A, 5B, 6A-6E, and equivalents thereof. Defendants contrive various issues with all recitations of algorithm other than the ones at column 6 line 49 to column 7 line 52. *See* Resp. Br. at 10. However, Defendants' arguments are conclusory and fail to show how the cited portions of the specification do not recite algorithms for performing a SRG topology transformation … which discourages the use of network resources. *Typhoon Touch*., 659 F.3d at 1384-86.

**II.      U.S. Patent No. 6,999,727 (Case No. 6:20-cv-00543) Disputed Claim Terms**

**4.      "a number of corrected errors (BCE) in a non-SCS base reference time period" (Claims 1, 4-7)[3]**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "the number of background corrected errors *that have been corrected* within a base reference time period which is different than the base reference time period used to [calculate] *detect* uncorrected blocks" |

This term should be given its plain and ordinary meaning. Defendants' various modifications to its original proposed construction is further evidence its proposed construction is confusing and unhelpful. The claim language expressly provides the definition of the claim term. Specifically, the term itself recites that it is a number of corrected errors that are in a non-SCS base reference time period. *See* '727 patent, 5:34-35 (Claim 1), 6:21-22 (Claim 4), 6:45-46 (Claim 5), 7:1-2 (Claim 6), 8:10-11 (Claim 7). The claims also provide a definition of SCS time period as "a defected base reference time period (SCS) or a time period where at least an uncorrected block

---

[3] Defendants no longer seek construction of the term "corrected errors." Resp. Br. 11, n.8.

(UB) has been detected." *See Id.*, 5:31-33 (Claim 1), 6:17-19 (Claim 4), 6:41-43 (Claim 5), 6:65-67 (Claim 6), 8:7-9 (Claim 7). Thus, the term is expressly defined by the claim language.

Moreover, while Defendants appear to make a prosecution history disavowal argument (Resp. Br. at 13), Defendants fail to identify their argument as such, nor do Defendants support any such argument. *See Computer Docking Station Corp. v. Dell*, Inc., 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply to an ambiguous disavowal.). "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013). And while it is unclear to WSOU how Defendants' proposal of "different than" relates to their argument of "separate and distinct" (Resp. Br. at 13), here, not only do Defendants fail to make a showing under the exacting standards of disavowal, the prosecution history itself does not support any such disavowal. For example, not only have Defendants failed to analyze the entirety of its cited documents, but a quick review shows that even in the particular passage cited by Defendants there is no clear and unmistakable disclaimer. As Defendants quoted, the patentee argued that the steps disclosed in Cooper "are all based on the same sample *window size*." Resp. Br. at 13 *quoting id.*, Ex. 1 at 6. In other words, the patentee argues that Cooper's disclosure is all based on the same *window size*, and there is nothing to suggest that windows must be "separate and distinct." There is no support for the exacting standards of prosecution history disavowal. Finally, to the extent a "non-SCS base reference time period" were to be re-phrased (and it should not), the specification provides a much clearer re-wording in an example of a "non SCS second," which the specification provides as "namely, a [time period] at low frequency of errors, wherein the errors can be corrected." *Id.*, 3:9-11.

5.   **"means for implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction function" (Claims 4, 5)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function: implementing a Performance Monitoring function based on data retrieved | Subject to 35 U.S.C. § 112, ¶6 |

| through a Forward Error Correction function | Function: implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction function |
|---|---|
| Structure: telecommunication network management system, and equivalents thereof | Structure: Algorithm disclosed in Figure 1, and equivalents thereof |
| Algorithm (if required): *see e.g.*, 1:63-2:21, 2:36-4:54, Fig. 1, and equivalents thereof | |

The **correct corresponding structure is** "<u>telecommunication network management system, and equivalents thereof</u>." *See e.*g., '727 patent, 5:66-67 (Claim 4), 6:23-24 (Claim 5); *see also Id.*, 2:10-16. Defendants argue that the above cannot be the corresponding structure because of "reasons explained … with regard to the '627 patent" (Resp. Br. at 14-15), but Defendants provide no analysis, much less any analysis applied to the '727 patent. Regardless, the specification teaches that there already existed communications systems, including communication systems having a Forward Error Correction (FEC) mechanism. '727 patent, 1:17-59. The specification also teaches that Performance Monitoring (PM) procedures were also known. *Id.*, 1:42-52. And the specification recites that the object of the invention is to provide a specific implementation for a Performing Monitoring function. *Id.*, 1:63-2:25. Similarly, the specification also recites that the described calculations "are carried out **in the network elements of the telecom network**, inserting them as hardware or software procedures that are *additional to the PM ones* **which are already generally provided and known to the man skilled in the art**." *Id.*, 4:39-44 (emphasis added). Thus, as the specification shows, telecommunication network management systems implementing Performance Monitoring systems *were known in the art*. Moreover, the specification goes on to teach that the invention can also be implemented on software and computer readable medium run on a computer. *Id.*, 4:65-5:8.[4] To the extent an algorithm is required, exemplary algorithms disclosed in the specifications are recited at '727 patent, 1:63-2:21, 2:36-4:54, Fig. 1, and equivalents thereof. Defendants complain that the passage at 1:63-2:21 "generically copies the claim language" (Resp. Br. at 15, n.11), but Defendants fail to provide any analysis for its

---

[4] Defendants' reliance on *Williamson* for the proposition that a general-purpose computer cannot be structure is misplaced. *See* n.2, above. This applies to all instances where Defendants make such an argument.

conclusion. To the contrary, the passage at-issue recites implementing a PM function that correlates "corrected" and "uncorrected" information blocks, *and also* states that the invention is "better described in the claims, which form an integral part with the present description." *Id.*, 2:10-16. In addition to Claims 4 and 5 themselves, at least Claim 1 recites "a method for implementing a Performance Monitoring function…," which includes making certain calculations comprising the calculations of a Performance Monitoring function. *See Id.* 5:17-35. Furthermore, the specification also teaches obtaining certain values from a FEC end function (such as CEC, UBC, and DS), and based on those FEC values, determining certain other values (such as BCE and SCS), and determining a summation of values of BCE and SCS events, and correlating the information regarding corrected blocks and uncorrected blocks. *See* 2:36-4:54, Fig. 1.

6. **"means for classifying said blocks either as corrected or uncorrected through the Forward Error Correction function" (Claims 4, 5)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function: classifying said blocks either as corrected or uncorrected through the Forward Error Correction function<br><br>Structure: network node performing Forward Error Correction function, and equivalents thereof | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for lack of structure. |

The **correct recited function is** "<u>classifying said blocks either as corrected or uncorrected through the Forward Error Correction function</u>." The **correct corresponding structure is** "<u>network node performing Forward Error Correction function, and equivalents thereof</u>." *See e.*g., '727 patent, 2:45-65 ("[t]he following primitives can be obtained from a FEC end function, performed in the network node: [listing CEC, corrected errors; UBC, uncorrected blocks; DS: defect second]"). As the specification recites, the Forward Error Correction mechanism was known in the field (*Id.*, 1:22-24), and the primitives are obtained through the FEC end function. *Id.*, 2:45-65. In other words, it is the Forward Error Correction function that performs the classifying thus making the primitives (the result of the classifying) available to be obtained. Finally, the Sharma Declaration's testimony (¶¶ 62-72) is conclusory, without any evidence or analysis for support,

and should not be given any weight. *Hill-Rom Servs.*, 755 F.3d at 1385. In particular the Sharma Declaration does not provide any analysis of the FEC function itself and does not provide any evidence or analysis why it is not the FEC function that performs the recited classifying.

> 7.     **"means for calculating the Performance Monitoring function by implementing a correlation of the information regarding said corrected and uncorrected blocks" (Claims 4, 5)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function: calculating the Performance Monitoring function by implementing a correlation of the information regarding said corrected and uncorrected blocks<br><br>Structure: telecommunication network management system, and equivalents thereof<br><br>Algorithm (if required): *see e.g.*, 1:63-2:21, 2:36-4:54, Fig. 1, and equivalents thereof | Subject to 35 U.S.C. § 112, ¶6<br>Function: [] *calculating the Performance Monitoring function by implementing a correlation of the information regarding said corrected and uncorrected blocks*<br><br>Structure: Algorithmic structure:<br>$BER_{IN} = \Sigma BCE / (NSEC - \Sigma SCS)$, and equivalents thereof |

The **correct corresponding structure is** "telecommunication network management system, and equivalents thereof." Defendants argue that the above cannot be the corresponding structure because of "reasons explained ... with regard to the '627 patent" (Resp. Br. at 19), but Defendants provide no analysis, much less any analysis applied to the '727 patent. Regardless, the specification teaches that there already existed communications systems, including communication systems having a Forward Error Correction (FEC) mechanism. '727 patent, 1:17-59. And the specification teaches that Performance Monitoring (PM) procedures were also known. *Id.*, 1:42-52. And the specification recites that the object of the invention is to provide a specific implementation for a Performing Monitoring function. *Id.*, 1:63-2:25. Similarly, the specification also recites that the described calculations "are carried out **in the network elements of the telecom network**, inserting them as hardware or software procedures that are *additional to the PM ones* **which are already generally provided and known to the man skilled in the art**." *Id.*, 4:39-44 (emphasis added). Thus, as the specification shows, telecommunication network management systems implementing Performance Monitoring systems *were known in the art*. Moreover, the

specification goes on to teach that the invention can also be implemented on software and computer readable medium run on a computer. *Id.*, 4:65-5:8.[5] To the extent an algorithm is required, exemplary algorithms disclosed in the specification are recited at '727 patent, 1:63-2:21, 2:36-4:54, Fig. 1, and equivalents thereof. For example, the specification teaches obtaining certain values from a FEC end function (such as CEC, UBC, and DS), based on those FEC values, determining certain other values (such as BCE and SCS), determining a summation of values of BCE and SCS events, and correlating the information regarding corrected blocks and uncorrected blocks. *See e.g.*, 2:36-4:54, Fig. 1. Defendants' complaints about Figure 1 are misplaced.  As the specification teaches, the events BCE and SCS "have been defined for the determination of the performance monitoring PM based on the FEC" (*Id.*, 3:4-6), and Figure 1 illustrates at least how to calculate the summation of BCE and SCS. Next, Defendants provide no authority to support their contention that the same structure cannot perform two functions. To the contrary, the Federal Circuit has long recognized that a single structure may perform multiple functions. *See Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1313 (Fed. Cir. 2001) (noting that it is a "truism" that a single structure may perform two functions; *see also Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 4 F. App'x 832, 839-40 (Fed. Cir. 2001) ("a single structure, such as a decoder or a buffer, may support two different claim limitations").

**8.    "implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction Function" (Claims 6, 7)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Subject to 35 U.S.C. § 112, ¶6<br>Function: implementing a Performance Monitoring function based on data retrieved through a Forward Error Correction function<br><br>Structure: Algorithm disclosed in Figure 1, and equivalents thereof. |

Because this term does not contain the words "means for," there is a rebuttable presumption

---

[5] Defendants' reliance on *Williamson* for the proposition that a general-purpose computer cannot be structure is misplaced. *See* n.2, above.

that section 112, paragraph 6, does not apply to that limitation. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc). Here, the claim language refers to structure, given that the preamble of Claims 6 and 7 recite "a computer program having a program code… when said program is run on a computer…" ('727 patent, 6:47-49 (Claim 6)) and "a computer readable medium having recorded thereon a computer code…adapted to enable a computer to perform the steps comprising…" (7:3-5 (Claim 7)). The term "program code" of Claim 6 is not a nonce word and connects specific structure. *See e.g.*, *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, 2019 Markman 4259020, 2019 WL 4259020, *30-*32 (E.D. Tex. 2019) (term "program code" was not a nonce word but connoted specific structure to avoid means-plus-function treatment); *WhitServe LLC v. GoDaddy.Com, Inc.*, 2014 WL 5668335, *3-*4 (D. Conn. 2014) (ruling that claim limitation "software executing on said computer" was not a means-plus-function limitation); *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 2018 Markman 1699429, 2018 WL 1699429, *16-*18 (E.D. Va. 2018) (term in limitations reciting "computer code" was not a means-plus-function limitation). Defendants' contention that "WSOU relies upon cases decided prior to the *Williamson* decision" (Resp. Br. at 21) ignores the other, post-*Williamson* cases that are cited. Defendants' complaint in a footnote that the claim here provides structure (the computer) in the preamble and not the claim body is curious at least because Defendants provide no authority for their implication that structure recited in the preamble, followed by detail of the instructions, is ignored. Defendants' reliance on *Rain Computer, Inc.*, Case No. 20-1646, Dkt. No. 45, is misplaced. *Rain Computer* does not stand for the proposition that a general-purpose computer is not structure for the purposes of overcoming *Williamson*. Instead, at the portion cited by Defendants, it was already determined that the term-at-issue was a means-plus-function term, and the Court was looking to the specification for the corresponding structure (and algorithm). *Id.*, at 7-9. *Rain Computer* is inapposite as to whether a computer is sufficient structure to prevent the application of § 112, ¶6 for a term that does not recite "means" in the first place.

Claim 7 is written in a *Beauregard* claim format. *See CLS Bank*, 717 F.3d at 1287 "named for *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995) . . . [c]laims in Beauregard format formally

recite a tangible article of manufacture—a computer-readable medium, such as a computer disk or other data storage device—but such claims also require the device to contain a computer program for directing a computer to carry out a specified process"). Tellingly, Defendants provide no arguments on why Claim 7 is not a tangible article of manufacture. It is also telling that Defendants' expert does not provide any opinion (conclusory or otherwise) as to whether a person of ordinary skill would understand a computer and computer readable medium, in the context of the specification, to denote structure. Instead, Defendants' expert only opines on how to proceed "[s]hould the Court find these claim limitations are subject to 35 U.S.C. § 112, ¶6." Resp. Br. at 22 *citing* Sharma Decl., ¶ 38.  Accordingly, this term is not subject to 35 U.S.C. § 112, ¶6, but to the extent the Court deems that the presumption is overcome, this term should be construed the same way as the analogous claim term discussed in Section II.5, above.

### 9. "classifying said blocks either as corrected or uncorrected through the Forward Error Correction function" (Claims 6, 7)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Subject to 35 U.S.C. § 112, ¶6 Indefinite for lack of structure. |

Because this term does not contain the words "means for," there is a rebuttable presumption that section 112, paragraph 6, does not apply to that limitation. Here, the presumption is not overcome and the claim language refers to structure for the same reasons discussed in Section II.8, above. To the extent the Court deems that the presumption is overcome, this term should be construed the same way as the analogous claim term discussed in Section II.6, above.

### III. U.S. Patent No. 7,508,755 (Case No. 6:20-cv-00535) Disputed Claim Terms

### 10. "originating network device" (Claims 1, 3)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a network device of a primary LSP which is not a source network device of the same primary LSP" |

The claim language itself provides a definition of this term. Specifically, an "originating network device" is operable to re-route traffic along a bi-directional LSP in a forward direction to an alternate path…" and "transmit a switch over message..." '755 patent, 4:12-20. The

specification discloses the same. *See Id.*, 1:51-57. Defendants argue that the claim language recites what the device does, but not what it is (Resp. Br. at 23, n.18), but even Defendants' own parenthetical shows that is a false distinction. It is a network device that does what is recited by the claim language. Additionally, Defendants' proposed construction is confusing and unhelpful as there is no requirement for "a primary LSP" anywhere in the claim language; instead the claims only require "a bi-directional LSP" and an "alternate path." Moreover, Defendants' proposed construction is improper for attempting to import limitations from the specification into the claim language. For example, Defendants seek to require that the term cannot be "a source network device," support for which Defendants point to the disclosure regarding the embodiment depicted by Figure 2. But that particular embodiment explains, "[t]his is so, because bi-directional Fast Re-routing uses some of the functionality of traditional MPLS Fast Re-routing which does not function at a source network device." '755 patent, 3:1-3. However, the specification expressly understood that it could only describe "so-called *existing* MPLS Fast Re-routing techniques." *Id.*, 1:15-17 (emphasis added). Further, Defendants fail to show any disavowal where the scope of the invention is clearly stated and is described as an advantage and distinction of the invention to limit the claims *in the way* Defendants propose. *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339-40 (Fed. Cir. 2004) (Where the general summary of the invention describes a feature of the invention and criticizes other products "**that lack the same features**, this operates as a clear disavowal of these other products") (emphasis added).

### 11.    "switch over message" (Claims 1, 5, 8, 10, 13, 16, 18, 23, 25)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a message which instructs a device to perform a switch over to the alternate path and which is not a message that indicates a fault has occurred in the network" |

Defendants' proposed construction at best attempts to re-phrase the claim language, which is unnecessary, but also attempts to add a negative limitation that the term "is not a message that indicates a fault has occurred in the network." However, this negative limitation does not clarify "switch over message," and instead it amounts to an attempt of improper importation of a limitation

from the specification. Indeed, the word "fault" doesn't appear anywhere in the patent, and to the extent the negative limitation can be understood, it is unclear how a switch over message would be completely exclusive of also being a message that indicates a fault in the network. Defendants' arguments as to prosecution history disavowal are also misplaced. "Prosecution disclaimer does not apply to an ambiguous disavowal." *Dell*, 519 F.3d at 1375. "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M*, 725 F.3d at 1325. None of Defendants' citations to the prosecution history constitute a clear and unmistakable disclaimer that the switch over message cannot also indicate a fault. Instead, in each, the applicant merely states that the reference's (Carpini) "fault indication" message is not a switch over message because Carpini's message does not re-route traffic along an alternative, bi-directional LSP in a backwards direction. *See* Resp. Br. Ex. 3, at 10, Ex. 4, at 9-10, Ex. 5 at 10-11. In fact, as Defendants' Exhibit 5 shows, the applicant does not take issue with Carpini's "fault indication" message for possibly performing both indicating a fault and allegedly being a switch over message for "re-routing" and "diverting" data; instead the applicant only states that Carpini is "completely silent with respect to the use of a switch over message to re-route data along a bidirectional LSP in a backward direction to an alternate path." Resp. Br., Ex. 5, at 11. Thus, there is no clear and unmistakable disavowal.

12. **"means for re-routing traffic traveling along the bi-directional LSP in the backwards direction..." (Claims 8, 23, 25)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function:<br>Claim 8: re-routing traffic traveling along the bi-directional LSP in the backwards direction to the alternate path in the backwards direction based on the switch over message;<br>Claim 23: re-routing traffic traveling along a bi-directional LSP in a backwards direction to an alternate path in the backwards direction based on the switch over message;<br>Claim 25: re-routing traffic traveling along the bi-directional LSP in a backwards direction to the same alternate path in the backwards | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for failure to disclose sufficient structure. |

| | |
|---|---|
| direction based on the switch over message<br><br>Structure: merging network device, and equivalents thereof<br><br>Algorithm (if required): *see e.g.*, 2:7-32, 2:43-60, 3:13-36, Figs. 1, 2, 3 | |

The **correct corresponding structure is** "merging network device, and equivalents thereof." *See e.g.*, '755 patent, 4:44-45, 6:20, 2:19-25, 2:52-60, 3:13-16. Defendants argue that the above cannot be the corresponding structure because of "reasons explained … with regard to the '627 patent" (Resp. Br. at 29), but Defendants provide no analysis, much less any analysis applied to the '755 patent. Regardless, the specification recites that merging network device is network device 140 and performs the recited functions. *See e.g.*, '755 patent, 2:19-26, 2:51-52, 3:17-28. Further, the specification teaches that a merging network device could be a control processing section, and the control processing section can also perform the recited functions. *Id.*, 3:17-28. The specification also teaches that the control processing section may be hardware, software, firmware, or some combination. *Id.*, 3:37-40. [6] To the extent an algorithm is required, the claim language itself sets out an algorithm, and further exemplary algorithms disclosed in the specification are recited at *Id.*, 2:7-32, 2:43-60, 3:13-36, Figs. 1, 2, 3, and equivalents thereof. For example, the specification teaches a merging network device receiving a switch over message having an alternate path that may be predetermined, and based on the switch over message, the merging network device creates an alternate path in the backward direction using the same network elements and switches backward flowing traffic to the alternate path. *Id.* Defendants contrive various issues with two recitations of algorithm cited by WSOU. *See* Resp. Br. at 29-30. However, Defendants' arguments are conclusory. [7] *Typhoon Touch.*, 659 F.3d at 1384-86. For all "other

---

[6] Defendants' reliance on *Williamson* for the proposition that a general-purpose computer cannot be structure is misplaced. *See* n.2, above. This applies to all instances where Defendants make such an argument.

[7] Additionally, Defendants' complaints regarding the passage at "2:43-60" is misplaced, this passage shows that the switch over message is received by the merging network device, which then performs the recited functions.

citations," Defendants provide only a mere string cite to *fourteen paragraphs* in Dr. Lavian's testimony, ostensibly as a way to get around the agreed-upon briefing page limits. Regardless, Dr. Lavian's testimony (¶¶ 74-87) is conclusory and unhelpful to the Court. *Hill-Rom Servs.*, 755 F.3d at 1385.

13. **"means for re-routing traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction" (Claim 20)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Subject to 35 U.S.C. § 112, ¶6<br>Function: re-routing traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction<br><br>Structure: originating network device, and equivalents thereof<br><br>Algorithm (if required): *see e.g.*, 1:51-56, 2:7-32, 2:43-60, Figs. 1, 2, 3 | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for failure to disclose sufficient structure. |

The **correct corresponding structure is** "originating network device, and equivalents thereof." *See e.*g., '755 patent, 6:1-2, 1:51-56, 2:7-32, 2:43-60. Defendants argue that the above cannot be the corresponding structure because of "reasons explained in [sections discussing other patents]" (Resp. Br. at 30), but Defendants provide no analysis, much less any analysis applied to the '755 patent. Regardless, the specification recites that upon detection of a failure, "network device 120 takes on the role of an 'originating' network device. *See e.g.*, '755 patent, 2:14-15. Further, the specification teaches that an originating network device (network device 120) could be a control processing section, and the control processing section can also perform the recited functions. *Id.*, 2:11-19, 2:35-60. The specification also teaches that the control processing section may be hardware, software, firmware, or some combination. *Id.*, 2:35-39. To the extent an algorithm is required, the claim language itself sets out an algorithm, and further exemplary algorithms disclosed in the specification are recited at *Id.*, 1:51-56, 2:7-32, 2:43-60, Figs. 1, 2, 3, and equivalents thereof. For example, the specification teaches an originating network device determining an alternate path or using a stored predetermined alternate path, then sending a switch

over message along the alternate path to the merging network device, and then performing a switch over so that traffic flowing in the forward direction can travel along the alternate path. *Id.* Defendants contrive issues with one recitation of algorithm cited by WSOU. *See* Resp. Br. at 29-30. However, Defendants' arguments are conclusory.[8] *Typhoon Touch*., 659 F.3d at 1384-86. For all "other citations," Defendants provide only a mere string cite to another *fourteen paragraphs* in Dr. Lavian's testimony, again, ostensibly as end-around to the briefing page limits. Regardless, Dr. Lavian's testimony (¶¶ 88-101) is conclusory and unhelpful to the Court. *Hill-Rom Servs.*, 755 F.3d at 1385.

**14. "means for transmitting a switch over message along the alternate path in the forward direction…" (Claims 20, 25)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function:<br>Claim 20: transmitting a switch over message along the alternate path in the forward direction to a merging network device responsive for re-routing traffic traveling along the bi-directional LSP in a backward direction to the alternate path in the backward direction;<br>Claim 25: transmitting a switch over message, along the alternate path in the forward direction, for re-routing traffic traveling along the bi-directional LSP in a backward direction"<br><br>Structure: originating network device, and equivalents thereof<br><br>Algorithm (if required): *see e.g.*, 1:51-56, 2:7-32, 2:43-60, 3:9-36, Figs. 1, 2, 3 | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for failure to disclose sufficient structure. |

The **correct corresponding structure is** "originating network device, and equivalents thereof." *See e.g.*, '755 patent, 6:1-2, 1:51-56, 2:7-32, 2:43-60. Defendants argue that the above

---

[8] Additionally, Defendants' complaints regarding the passage at "2:43-60" is misplaced.  This passage shows that the switch over message is received by the merging network device, which then performs the recited functions.

cannot be the corresponding structure because "[a]s explained above with regard to the '627 patent…" (Resp. Br. at 32), but Defendants provide no analysis, much less any analysis applied to the '755 patent. Regardless, the specification recites that upon detection of a failure, "network device 120 takes on the role of an 'originating' network device. *See e.g.*, '755 patent, 2:14-15. Further, the specification teaches that an originating network device (network device 120) could be a control processing section, and the control processing section can also perform the recited functions. *Id.*, 2:11-19, 2:35-60. The specification also teaches that the control processing section may be hardware, software, firmware, or some combination. *Id.*, 2:35-39. To the extent an algorithm is required, the claim language itself sets out an algorithm, and further exemplary algorithms disclosed in the specification are recited at *Id.*, 1:51-56, 2:7-32, 2:43-60, 3:9-36, Figs. 1, 2, 3, and equivalents thereof. For example, the specification teaches an originating network device determining an alternate path or using a stored predetermined alternate path and sending a switch over message along the alternate path to the merging network device. Based on the switch over message, the merging network device creates an alternate path in the backward direction using the same network elements and switches backward flowing traffic to the alternate path. *Id.* Defendants contrive issues with two recitations of algorithm cited by WSOU. *See* Resp. Br. at 33. However, Defendants' arguments are conclusory. *Typhoon Touch.*, 659 F.3d at 1384-86. For all "other citations," Defendants provide only a mere string cite to another *sixteen paragraphs* in Dr. Lavian's testimony, again, ostensibly as end-around to the briefing page limits. Regardless, Dr. Lavian's testimony (¶¶ 102-117) is conclusory and unhelpful to the Court. *Hill-Rom Servs.*, 755 F.3d at 1385.

**15.    "means for means for [sic] receiving traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction" (Claim 23)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶6<br>Function: receiving traffic traveling along a bi-directional LSP in a forward direction to an alternate path in the forward direction | Subject to 35 U.S.C. § 112, ¶6<br>Indefinite for failure to disclose sufficient structure. |

| Structure: merging network device, and equivalents thereof  Algorithm (if required): *see e.g.*, 2:7-32, 2:43-60, 3:13-36, Figs. 1, 2, 3 | |

The **correct corresponding structure is** "merging network device, and equivalents thereof." *See e.*g., '755 patent, 6:20, 2:7-32, 2:43-60, 3:13-36. Defendants argue that the above cannot be the corresponding structure because "[a]s explained above with regard to the '627 patent…" (Resp. Br. at 32), but Defendants provide no analysis, much less any analysis applied to the '755 patent. Regardless, the specification recites that merging network device is network device 140 and performs the recited functions. *See e.*g., '755 patent, 2:19-26, 2:51-52, 3:17-28. Further, the specification teaches that a merging network device could be a control processing section, and the control processing section can also perform the recited functions. *Id.*, 3:17-28. The specification also teaches that the control processing section may be hardware, software, firmware, or some combination. *Id.*, 3:37-40. To the extent an algorithm is required, [9] the claim language itself sets out an algorithm, and further exemplary algorithms disclosed in the specification are recited at *Id.*, 2:7-32, 2:43-60, 3:13-36, Figs. 1, 2, 3, and equivalents thereof. For example, the specification teaches a merging network device receiving a switch over message in the forward direction via an alternate path after a failure is detected. *Id.*  Defendants contrive issues with two recitations of algorithm cited by WSOU. *See* Resp. Br. at 34. However, Defendants' arguments are conclusory. *Typhoon Touch.*, 659 F.3d at 1384-86. For all "other citations," Defendants provide only a mere string cite to another *eight paragraphs* in Dr. Lavian's testimony, again, ostensibly as end-around to the briefing page limits. Regardless, Dr. Lavian's testimony (¶¶ 125-132) is conclusory and unhelpful to the Court. *Hill-Rom Servs.*, 755 F.3d at 1385.

**IV.     U.S. Patent No. 8,417,112 (Case No. 6:20-cv-00540) Disputed Claim Terms**

    **16.     "determining whether said collected BER values worsen over time"**
             **(Claims 1, 11)**

---

[9] The Federal Circuit has held that for functions such as "receiving," no algorithm is required. *In re Katz Interactive Call Proc. Patent*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).

| WSOU's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "determining whether said collected BER values worsen over time by comparing one or more of said recent ones of said collected BER values with said other collected BER values" |

The claim language itself provides a definition of this term. Defendants' additional recitation in their proposal is confusing, as it simply states that some value(s) should be compared with other value(s), but that concept is already included in the term itself. Defendants argue that Defendants' proposed construction includes "the recent ones of said collected BER values" as an additional requirement not reflected in the term (Resp. Br. at 39), but Defendants fail to acknowledge the full context of the claim language. Indeed, the "recent ones of said collected BER values" is fully accounted for in prior claim elements and in this term reciting "**said** collected Ber values." *See e.g.* '112 patent, 9:51-61 (claim 1), 11:29-39 (claim 11). Moreover, it is unclear how comparing merely <u>one</u> recent value can show the BER values "worsen over time." Defendants' attempt to explain this only highlights the confused nature of Defendants' proposal. Defendants' arguments as to prosecution history disavowal are also misplaced. "Prosecution disclaimer does not apply to an ambiguous disavowal." *Dell*, 519 F.3d at 1375. "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M*, 725 F.3d at 1325. None of Defendants' citations to the prosecution history constitute a clear and unmistakable disclaimer of "plain and ordinary meaning" (Resp. Br. at 38). Instead, the applicant disagreed with the Examiner's reading of Vieregge. *See e.g.*, Resp. Br., Ex. 9, at 17 ("Appellant submits that the Examiner's conclusions regarding the teachings of Vieregge do not comport with the teachings of Vieregge."). The applicant noted that Vieregge's use of **one** BER value (the latest) and a rate of increase between two consecutive measurements <u>is not the same</u> as determining whether said collected BER values worsen over time. *Id*, at 16-17. Defendants' reproduced portions of the prosecution history merely provide exemplary embodiments and descriptions of the invention, thus, there is no clear and unmistakable disavowal.

Dated: March 19, 2021         Respectfully submitted,

By:    */s/ Ryan Loveless*
        James L. Etheridge
        Texas Bar No. 24059147
        Ryan S. Loveless
        Texas Bar No. 24036997
        Brett A. Mangrum
        Texas Bar No. 24065671
        Travis L. Richins
        Texas Bar No. 24061296
        Jeffrey Huang
        Etheridge Law Group, PLLC
        2600 E. Southlake Blvd., Suite 120 / 324
        Southlake, TX 76092
        Tel.: (817) 470-7249
        Fax: (817) 887-5950
        Jim@EtheridgeLaw.com
        Ryan@EtheridgeLaw.com
        Brett@EtheridgeLaw.com
        Travis@EtheridgeLaw.com
        Jhuang@EtheridgeLaw.com

        Mark D. Siegmund
        State Bar No. 24117055
        mark@waltfairpllc.com
        Law Firm of Walt, Fair PLLC.
        1508 North Valley Mills Drive
        Waco, Texas 76710
        Telephone: (254) 772-6400
        Facsimile: (254) 772-6432

        *Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on March 19, 2021.

        */s/ James L. Etheridge*
        James L. Etheridge